

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

ENTERED
08/15/2017

| | | |
|---|---|---|
| IN RE: | § | |
| GILBERT LONGORIA GARZA; aka | § | **CASE NO: 16-70534** |
| LONGORIA; aka GARZA, *et al* | § | |
| Debtors | § | |
| | § | **CHAPTER 13** |
| | § | |
| | § | **JUDGE EDUARDO V. RODRIGUEZ** |

### MEMORANDUM OPINION
### OVERRULING IN PART AND SUSTAINING IN PART
### TRUSTEE'S OBJECTION TO CONFIRMATION
### &
### DENYING CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN
*Resolving ECF Nos.* **19, 28**

## I.  INTRODUCTION

It is well known that bankruptcy has two primary public policy objectives.  The first is to promote equality of distribution among similarly situated creditors.  The second is to afford the debtor a fresh economic start.  These goals of distribution and a fresh start are sometimes referred to as the twin pillars of bankruptcy.[1]  Theoretically, the twin pillars should be co-equal. When confirming a debtor's chapter 13 plan, bankruptcy courts must remain vigilant and be prepared to steady the pillars—thereby, ensuring a fair ratable return to creditors while simultaneously promoting the debtor's fresh financial start.

In the case *sub judice*, this Court must determine whether it should confirm above-median income Debtors' chapter 13 plan wherein they have included a $424.52[2] monthly voluntary 401(k) contribution in their Statement of Current Monthly Income and Calculation of Commitment Period as a "Change in Income or Expenses" and Schedule I deduction despite

---

[1] *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071–72 (5th Cir. 1986).

[2] Debtors list the 401(k) deduction amount as $424.51 in their Means Tests, but list the deduction as $424.52 in Schedule I.  *Compare* ECF No. 1 at 52 *with* ECF No. 27 at 13.  For the purposes of this opinion, Schedule I controls.

failing to contribute to the 401(k) prior to filing their bankruptcy petition and if so, whether such allowance would topple the twin pillars.

## II.  FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  To the extent that this Court made any oral findings and conclusions on the record, this Memorandum Opinion controls.

On December 14, 2016, Gilbert Longoria Garza and Santos Mesa (collectively, the "*Debtors*" or individually, respectively, "*Mr. Garza*" and "*Mrs. Mesa*") filed their petition under chapter 13 of title 11 of the Bankruptcy Code.[3]  ECF No. 1.  Debtors listed on Schedule I monthly income of $8,609.34, and monthly deductions of, among other items, $424.52 as a voluntary contribution to Mr. Garza's 401(k) plan.  Debtors listed on Schedule J a monthly net income of $1,100.00.  ECF No. 1  Along with their petition and Plan, Debtors filed Official Form 122C-1—Chapter 13 Statement of Monthly Income and Calculation of Commitment Period and Official Form 122C-2 – Calculation of Your Disposable Income (the "*Means Test*") listing a six-month averaged monthly income, or current monthly income, of $8,576.21.  Because Debtors' annualized income of $102,914.52 is more than the median family income for a household of six in Texas ($89,498.00), Debtors are "above-median debtors."   That designation requires a minimum applicable commitment period of five years under 11 U.S.C. §1325(b)(4) and the use

---

[3] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

of standard IRS expense deductions[4] on their form 122C.  *But see In re Nowlin*, 576 F. 3d 258, 267 (5th Cir. 2009) (explaining that "a bankruptcy court may consider reasonably certain future events when evaluating a Chapter 13 plan for confirmation under § 1325" when determining a debtor's projected disposable income).  After taking allowed deductions, the Means Test listed Debtors' monthly disposable income as $530.41 per month over sixty months, resulting in payments to unsecured creditors in the amount of $31,824.60.  ECF No. 3 at 13.  However, Debtors also documented a change in income or expenses[5] as authorized by Line No. 46 of the Means Test asserting increased expenses of $424.51, commencing on December 30, 2016, to account for a voluntary 401(k) contribution on Schedule I.  *Id.*  Simultaneously, Debtors filed their chapter 13 plan which included, *inter alia*, a $100.00 monthly deposit into the chapter 13 Trustee ("*Trustee*") Administered Savings Fund[6] ("*Savings Fund*") and a forecasted 40% dividend to general unsecured creditors.[7]  ECF No. 2 at 11 (including as amended, the "*Plan*"); *see also* ECF No. 28 at 11 (amending ECF No. 2).

On December 19, 2016, the first Meeting of Creditors was noticed for January 19, 2017, and April 19, 2017, was designated as the bar date for the filing of claims other than claims from governmental units.  ECF No. 13.  Simultaneously, Trustee filed her Notice of Confirmation Hearing and Plan Summary, which scheduled the confirmation hearing on February 23, 2017. ECF No. 14.  On January 3, 2017, Crest Financial, LLC ("*Crest*") filed an unsecured proof of

---

[4] 11 U.S.C. §§707(b)(2), 1325(b)(3)(A)

[5] Debtors improperly notate a change in Income or Expenses on Line 46, Part 3 of 122-C2 and cite to Line 19 of 122C-1 because Line 19 makes reference to a marital adjustment, if applicable.

[6] The Uniform Plan in the Southern District of Texas contains a unique provision for the Savings Fund to act as an apparatus for debtors to set aside funds for an emergency that may arise during the course of the plan.  *See generally* ECF No. 28 at ¶ 14.  Debtors may file an application to withdraw from the savings fund throughout the bankruptcy and "the balance in the emergency savings fund will be paid" to the debtors upon discharge, dismissal, or conversion.  *Id.*

[7] The Plan provisioned for $50,303.70 in general unsecured claims of which $20,257.57 was to be distributed pro-rata among the unsecured class.

claim based on a lease for a seven piece dining table and two chairs in the amount of $1,809.53 and attached a copy of the Rental Purchase Agreement between Crest and Mr. Garza. Claim No. 2-1. No objections have been filed to the Crest claim. Debtors initially scheduled the Crest claim to be paid in Section 5 of the Plan, which provisions for the full payment of secured debts that were incurred, *inter alia*, within 1 year of the petition date. ECF No. 2 at 6. However, Debtors amended the Plan to now treat the Crest claim in Section No. 7 of the Plan, which provisions for secured debts with no default in payments that are to be paid in accordance with the pre-petition contract. ECF No. 28 at 6–7.

On January 19, 2017, the Meeting of Creditors was conducted and concluded after which Trustee did not recommend the Plan's confirmation. On February 16, 2017, Trustee filed an Objection to Confirmation of the Plan, which asserted that Debtors' Plan cannot be confirmed because (i) the Plan does not propose to pay all of Debtors' projected disposable income during the applicable commitment period and (ii) that due to errors on the Means Test, when corrected, would yield a higher disposable income and (iii) the Plan improperly treats Crest's unsecured claim as a secured claim under [Section] 5 of the Plan. ECF No. 19 (the "*Objection*").

On February 23, 2017, the Court conducted a hearing on confirmation of Debtors' Plan. At that hearing, Trustee reiterated the concerns her Objection raised: namely, Mr. Garza's voluntary 401(k) contributions and whether he actually contributed to the 401(k) pre-petition, as well as the treatment of Crest's claim in the Plan. Although raised in her written objection, Trustee did not press the issue of errors she raised regarding the Means Test. In response, Debtors' Counsel confirmed that the voluntary 401(k) contributions did not begin prior to bankruptcy; however, Mr. Garza's employer would be matching a "large percentage" of the 401(k) contribution going forward. *See* ECF No. 5. Trustee countered that since Debtors are

proposing such a large voluntary contribution—despite failing to contribute to the 401(k) pre-petition—the unsecured creditors, according to Trustee's calculations, would receive a 31% dividend.  Debtors' Counsel requested additional time to respond to the Objection, and Plan confirmation was reset to March 23, 2017.  ECF No. 20.

On March 23, 2017, the Court conducted its second hearing on plan confirmation.  At that hearing, Trustee reiterated her objection to various errors contained in the Means Test.  Additionally, Trustee reasserted her objection to Mr. Garza's post-petition voluntary 401(k) contributions and Debtors' exclusion of the voluntary 401(k) contribution from the disposable monthly income calculation in their initial Means Test.  *See also* ECF No. 3 at 13.   In response, Debtors' Counsel reasoned that contribution to the 401(k) is superior to contributing to the Savings Fund because not only will Mr. Garza's employer match up to 5% of Mr. Garza's salary—approximately $424.52 per month—the funds deposited into the 401(k), unlike the Savings Fund, will earn interest.  As Debtors' only witness, Mr. Garza testified as follows:

    i.    He is the Director of Campus Dining for University of Texas – Rio Grande Valley through the independent contractor, Sodexo;

    ii.    His employment with Sodexo required him to move to seven different cities in the last ten years;

    iii.    The [Debtors] have four sons ranging from nine to twenty-years-old;

    iv.    Mr. Garza's oldest son suffered a traumatic brain injury and requires significant care, and his youngest son has an "eating disorder" requiring special food preparation, which resulted in Mrs. Mesa remaining unemployed to care for the sons;

    v.    Debtors are seeking resources to assist their oldest son in his college studies, however, they are unclear on the cost of those resources;

    vi.    Mr. Garza did not contribute to the 401(k) prior to bankruptcy because of the expenses associated with frequent moves and four children;

    vii.    Sodexo will match the 401(k) contribution up to 5% of Mr. Garza's  salary,

although the percentage can change;

viii.   Mr. Garza's 401(k) contribution will not be designated as earned income and Debtors will forgo the Savings Fund contribution and instead use the $100.00 previously designated as a Savings Fund as a portion of the 401(k) contribution.

On cross-examination, Mr. Garza testified as follows:

(i)  He had never filed bankruptcy;

(ii)  His salary would re-set with every move, due in part to a cost of living adjustment, therefore he was unable to set aside any savings;

(iii)  He filed for bankruptcy because he was behind in his payments and wanted to provide a fresh start for his family.

The Court finds Mr. Garza's testimony to be, not only sincere, but credible.

Regarding Trustee's objections to the various Means Test calculations, Trustee noted that (i) the Plan is proposing to pay an average monthly payment of $270.00 for Vehicle 1 in comparison to the $421.73 average monthly payment listed on Line 13b, and (ii) Line 35 should be reserved for past-due priority claims and not ongoing priority claims.  In response, Debtors' Counsel noted that Sodexo was not withholding Mr. Garza's taxes and that Line 35 represents an estimation of taxes owed, which was not included in the Plan in error.  At the conclusion of the hearing, the Court ordered briefing from Debtors and Trustee, and took the matter under advisement.  On April 20, 2017, the Internal Revenue Service ("*IRS*") filed a Proof of Claim for $5,181.28, which was amended on May 25, 2017 provisioning for a $4,991.08 priority claim. Claim No. 13-2.  Debtors filed their brief on April 21, 2017, whereas Trustee filed her brief on May 5, 2017.  ECF Nos. 24, 25.

On June 23, 2017, Debtors filed an Amended Schedule J, which removed the $100.00 per month contribution to the Savings Fund previously contained on Line 21.  ECF No. 26 at 3. Simultaneously, Debtors filed an Amended Means Test.  ECF No. 27.  Although the applicable

commitment period remains 5 years, the amended Means Test now provisions the following:

(i)      Line 13b decreased the average monthly payment of Vehicle 1 from $421.73 to $270.00;

(ii)     Line 13e increased the average monthly payment of Vehicle 2 from $296.75 to $339.28;

(iii)    Line 16 increased the monthly expense for federal, state, and local taxes from $1,299.50 to $1,414.78 per month;

(iv)     Line 24 increased the total of all expenses allowed under the IRS allowances from $6,101.67 to $6,326.15;

(v)      Line 33d increased the average monthly payment on the Crest Claim from $13.93 to $30.16;

(vi)     Line 33e decreased the total average monthly payment from Lines 33a through 33d from $732.41 to $639.44;

(vii)    Line 35 increased the amount of priority claims from $3,393.50 or $56.56 to $4,191.08 or $69.85;

(viii)   Line 41 remains unchanged listing $0.00 as Debtors' "monthly total of all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C. § 541(b)(7);"

(ix)     Line 45 decreased Debtors' monthly disposable income from $530.41 to $384.47;

(x)      Line 46 remains unchanged with the increased expense of $424.51 due to Debtors' 401(k) contribution.

*Compare id.* at 8, 9, 11, 12, 13 *with* ECF No. 3 at 8, 9, 11, 12, 13.

On June 23, 2017, Debtors amended their Plan to, *inter alia*, account for the IRS claim and reduced the amount of dividend to the unsecured creditors to 36%.[8]  ECF No. 28 at 11. Further, Debtors' Plan no longer includes a contribution into the Savings Fund.  *Id.* at 7–8; *see also* ECF No. 26 at 3.  Now that the claims bar date has elapsed Trustee's website lists the amount of allowed unsecured claims as $33,423.48 in comparison to the scheduled $41,551.20.

---

[8] The Plan now provisions for $57,519.01 in general unsecured claims which results in $21,170.51 to be paid pro-rata.

Additionally, and based on Debtors' Plan, Trustee calculates that unsecured creditors will receive a 24.67% dividend. The Court's Claim Register, however, denotes $31,423.75 in allowed general unsecured claims—exclusive of the Crest Claim—in addition to a $10,614.62 unsecured claim added to the general unsecured class of creditors pool when one takes into account the bifurcated treatment of the 2012 Ford Expedition EL in Section No. 8 of the Plan for a total of $42,038.37 in general unsecured claims.

### III. LEGAL STANDARD

#### A. Statutory Interpretation

A basic canon for statutory interpretation is that if the language of the statute is plain, courts must enforce it as is written. *In re Lively*, 467 B.R. 884, 891 (Bankr. S.D. Tex. 2012) ("If a text is unambiguous on its face, does not produce absurd results, and fits coherently into the statute's overarching structure, the statutory interpretation exercise is complete."); *see also Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (finding that courts "follow the plain meaning of a statute unless it would lead to a result so bizarre that Congress could not have intended it"). When interpreting statutes, courts must reference "both specific context of language and the context of the entire statute." *In re Sierra*, 560 B.R. 296, 302 (Bankr. S.D. Tex. 2016) (citing *In re Raygoza,* 556 B.R. 813, 821 (Bankr. S.D. Tex. 2016)); *see also Yates v. United States*, 135 S. Ct. 1074, 1081 (2015). Further, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

#### B. Property of the Estate and Disposable Income

The extent to which creditors can reach a debtor's retirement assets in bankruptcy turns

on whether that property is part of the debtor's bankruptcy estate. Commencement of a bankruptcy case creates an estate, which is comprised of a variety of a debtor's "legal and equitable interests in property," unless excluded by statute. 11 U.S.C. § 541(a). Additionally, in a chapter 13 proceeding, property of the estate also includes "all property of the kind specified [in § 541(a)] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1). Pursuant to § 541(b)(7), property of the estate, however, does not include "any amount withheld by an employer from the wages of employees for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986." § 541(b)(7). Additionally, § 541(b)(7) includes what has become known as the "hanging paragraph,"[9] which states that "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)."[10] § 541(b)(7)(i)(I).

A debtor's disposable income is determined under 11 U.S.C. § 1325(b)(2) and is based on the debtor's current monthly income. Current monthly income "means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C. § 101(a)(10A)(A)(i). Consequently, "disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the

---

[9] This should not be confused with the "hanging paragraph" found in 11 U.S.C. § 1325(a)(9).

[10] An "employee benefit plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Notably, 401(k) plans are employee benefit plans subject to ERISA. 26 U.S.C. § 401(k); 29 U.S.C. § 1003(a) (defining ERISA's coverage).

maintenance or support of the debtor or a dependent of the debtor . . . and for charitable contributions and certain business expenses."  Subsection (3), however, clarifies that for debtors with above-median income, "amounts reasonably necessary" under subsection (2) "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2).  § 1325(b)(2).

Additionally, with this unnumbered hanging paragraph, Congress created an interplay between the disposable income calculation and property of the estate, §§ 1325(b)(2) and 541(b)(7), respectively.  In other words, "except that," which begin the hanging paragraph, would normally indicate an exception to that particular rule, but instead, the statute continues on to address an unrelated concept: "disposable income" in a chapter 13 case.  *Compare* § 541(b)(7) *with* § 1325(b)(2).  The question then becomes whether the hanging paragraph functions to allow 401(k) contributions by above-median-income debtors despite the omission of 401(k) contributions from the list of necessary expenses under the means test and despite debtor's failure to contribute to the 401(k) plan pre-petition.

Courts have encountered the relationship between these two sections and have developed three lines of reasoning: (1) the *Johnson* approach,  honing in on the phrase "shall not constitute disposable income" in the hanging paragraph of § 541(b)(7), uses the plain meaning of the hanging paragraph to conclude that "Congress has placed retirement contributions outside the purview of a chapter 13 plan," subject to good faith; (2) the *Seafort* methodology, which allows for voluntary contributions to 401(k) plans insofar as the debtor had made the contributions prior to filing for bankruptcy, because, *inter alia*, § 541 defines "property of the estate" at the commencement of the case and, therefore, "only 401(k) contributions [that] are being made at the commencement of the case are excluded from property of the estate under § 541(b)(7); and (3) the *Prigge* view, which holds that all voluntary retirement contributions are included in

disposable income, regardless of whether the debtor had been making them pre-petition because § 541(b)(7) is inapplicable, and therefore, contributions to a 401(k) plan for an above median-income debtor must cease and those funds must be used to pay creditors through the debtor's chapter 13 plan. *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012); *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010); *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga 2006).

### C. Projected Disposable Income & Confirmation of a Chapter 13 Plan

Confirmation of a chapter 13 plan is governed by both 11 U.S.C. § 1322, and § 1325. Mandatory plan requirements are governed by § 1322(a), whereas permissive requirements are governed by § 1322(b). *In re Sierra*, 560 B.R. at 299. Section 1322(a) requires that "[t]he plan shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."

Similarly, § 1325(a) requires a court to confirm a chapter 13 if the following conditions, *inter alia*, are met:

(1)    the plan complies with the provisions of this chapter and with the other applicable provisions of this title. . .;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . .;

(6) the debtor will be able to make all payments under the plan and to comply with the plan;

(7) the action of the debtor in filing the petition was in good faith.

Normally, the interplay of §§ 541(b)(7) and 1325(b)(2) do not stand in the way of plan confirmation. When a chapter 13 trustee or an unsecured creditor objects to confirmation, however, the intersecting sections are triggered resulting in the court being unable to confirm

unless the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1)(B). Although "disposable income' is defined by the Code as discussed above, "projected disposable income" is not. *Compare* § 1325(b)(1)(B) *with* §1325(b)(2). Accordingly, courts have determined that "projected disposable income" in the context of § 1325(b)(1)(B) requires a debtor "to account for any events which will definitely occur during the term of the Plan that would alter either the income or expense side of the disposable income calculation." *In re Nowlin*, 366 B.R. at 674; *see also Hamilton v. Lanning*, 560 U.S. 505, 524 (2010) (finding that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation").

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). In the instant case, the Court must determine whether Debtors' Plan is confirmable under the Code. ECF No. 28; *see also In re Sierra*, 560 B.R. at 299–300. Accordingly, this is a core matter as it pertains to confirmation of a chapter 13 plan. § 157(b)(2)(L); s*ee also In re Sierra*, 560 B.R. at

300; *In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[11]

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. In their petition, Debtors list their residence as Edinburg, Texas. ECF No. 1 at 2. Therefore, venue is proper.

### B. Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to a court's constitutional authority to enter final orders on non-core matters). Having determined that plan confirmation in this case is a core matter, the Court acknowledges the issues *Stern* presents. 564 U.S. at 473–74 (holding that "bankruptcy judges may hear and enter final judgments" in core proceedings). Plan confirmation "has preclusive effect" because the terms become binding on the debtor and creditors, thereby resulting in a final order. *In re Villareal*, 566 B.R. 859, 866 (Bankr. S.D. Tex. 2017) (citing *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015)); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). Accordingly, "[a]s plan confirmation is a quintessential issue created by federal bankruptcy law," this Court possesses constitutional authority to enter a final order confirming Debtors' Plan. *See In re Villareal*, 566 U.S. at 866; *In re McCarthy*, 554 B.R. 388, 389–90 (Bankr. W.D. Tex. 2016) (finding, pursuant to *Bullard*, that bankruptcy courts have "the authority to hear and enter orders regarding a debtor's chapter 13 plan").

### C. Post-Petition Voluntary 401k Contributions are Excluded from Projected Disposable Income

In considering whether Debtors' Plan can be confirmed, the initial question before this

---

[11] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

Court is whether voluntary contributions to a 401(k) commencing after a debtor filed bankruptcy are excluded from a debtor's projected disposable income. Consequently, this issue is a matter of first impression for this Court. The relationship between post-petition voluntary 401(k) contributions and projected disposable income has yet to be settled in the Fifth Circuit; however, ultimately the issue turns on statutory interpretation.

Much of the confusion surrounding this case stems from the calculation of Debtors' projected disposable income. The amount of Debtors' projected disposable income is crucial to this case because this Court cannot confirm Debtors' Plan over Trustee's Objection if Debtors do not commit all of their "projected disposable income" during the applicable commitment period. § 1325(b)(1)(B).

It is important to reiterate that although § 1325 permits a court to confirm a chapter 13 plan that includes a debtor's deduction for a 401(k), a court is only required to scrutinize such an expense when the trustee or unsecured creditor, as in this particular case, objects on that basis. *See id.* For an above-median debtor, however, "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." § 1325(b)(3). The Code creates a "mathematical formula," known as the means test, to eliminate a court's discretion and calculate a debtor's disposable income. *In re Hardcare*, 338 B.R. 718, 721 (Bankr. N.D. Tex. 2006). The mathematical formula exists in § 707(b)(2), which lists a variety of expenses a debtor may consider in the disposable income calculation, but prohibits the Debtor from including any "monthly expenses . . . [for] any payments for debts." § 707(b)(2)(A)(ii)(II). The Means Test also provides for calculations of secured debt payments and priority claims. § 707(b)(2)(A)(iii)–(iv). If the above referenced Code requirements are met and the chapter 13 plan is feasible, the court must confirm the debtor's plan. §§ 1322, 1325.

Contributions to a 401(k) plan, however, are not included in the IRS's list of allowable necessary expenses.

Nevertheless, the Bankruptcy Abuse Protection And Consumer Protection Act ("*BAPCPA*") amendments appear to have created a statutory peculiarity for those above-median debtors who wish to contribute to their 401(k) plans.  Although § 1325(b)(3) requires an above-median debtor's expenses to be calculated based on the means test and § 707(b)(2)(A)–(B), the hanging paragraph of § 541(b)(7) provides that "any amount withheld by an employer from the wages of employees for payments as contributions" to, *inter alia*, a 401(k) is excluded from property of the estate and "shall not constitute disposable income," which has resulted in different interpretations from Debtors and Trustee.  *See generally* ECF Nos. 24, 25.

Debtors contend that this Court should be guided by the *Johnson* standard, whereas Trustee urges the Court to follow the *Seafort* standard rather than the stricter *Prigge* standard. *Compare* ECF No. 24 at 5 *with* ECF No. 25 at 5.  Trustee asserts that Debtors are failing to contribute the entirety of their projected disposable income and therefore the Court cannot confirm the Plan pursuant to § 1325(b)(2).  ECF No. 19.  Although the *Johnson* and *Seafort* standards agree—in contrast with the *Prigge* standard—that § 541(b)(7) excludes voluntary retirement contributions from disposable income, the standards differ to the extent § 541(b)(7) excludes the contributions: to wit, whether all contributions are excluded or only to the extent debtors made contributions prior to filing bankruptcy.  *Compare In re Johnson*, 346 B.R. at 263 *with In re Seafort*, 669 F.3d at 674.  *But see In re Prigge*, 441 B.R. at 673.

This Court is inclined to side with the majority of courts and follow the reasoning of *Johnson* because excluding post-petition voluntary 401(k) contributions from projected disposable income comports with the plain meaning of § 541(b)(7).  *In re Johnson*, 346 B.R. at

263; *see also In re Cantu*, 553 B.R. 565, 570 (Bankr. E.D. Va. 2016) (adopting *Johnson* "for the simple reason that Section 541(b)(7) does not limit the debtor's ability to make contributions post-petition, nor is there any distinction between pre-petition contributions and post-petition contributions in the statute"); *In re Vanlandingham*, 516 B.R. 628, 635 (Bankr. D. Kan. 2014) ("I conclude that the *Johnson* view . . . is the better reasoned rule excluding postpetition voluntary 401(k) or other qualified retirement contributions from the calculation of disposable income and adopt it here."); *In re Drapeau*, 485 B.R. 29, 38 (Bankr. D. Mass. 2013) (holding that "§ 541(b)(7) excludes postpetition voluntary contributions to the retirement plans and annuities specified therein from the scope of disposable income under § 1325(b)(2), so long as made in good faith"); *In re Egan*, 458 B.R. 836, 848 (Bankr. E.D. Pa. 2011) ("Congress's omission from § 541(b)(7) of any reference to the petition date suggests that that [sic] Congress did not intend a debtor's petition date to be determinative of the amount of post-petition retirement contributions a debtor may offset from her projected disposable income."). Before Congress enacted BAPCPA, it was unclear whether voluntary retirement contributions were considered "reasonably necessary" exclusions pursuant to § 1325(b)(2). *In re Drapeau*, 485 B.R. at 33. BAPCPA, however, amended § 541 to "directly [speak] to voluntary retirement contributions when determining disposable income under § 1325(b)(2)." *In re Vanlandingham*, 516 B.R. at 632.

Although the hanging paragraph has undoubtedly caused a rift amongst courts, "the awkwardness of the language does not warrant a strained reading of an otherwise clear pronouncement that voluntary retirement contributions are excluded from the § 1325(b) disposable income calculation." *In re Drapeau*, 485 B.R. at 37. Looking to the plain meaning of § 541(b)(7), this Court agrees with the majority of courts that the statute "plainly state[s] that

[401(k)] contributions shall not constitute disposable income." *In re Johnson*, 346 B.R. at 263; *see also In re Vanlandingham*, 516 B.R. at 629 (holding that "[c]ontributions for 401(k) or other defined contribution retirement plans are not among the enumerated deductions in § 707(b)(2)(A), but § 541(b)(7) excludes wages withheld for that purpose from property of the estate and further provides that these withholdings 'shall not constitute disposable income' as it is defined in § 1325(b)(2)").

The *Seafort* analysis that Trustee proposes fails because it misinterprets the meaning of § 541.   Specifically, the *Seafort* approach reads the phrase "as of the commencement of the case," found in § 541(a)(1) as relating to § 541(b)(7) as well.   669 F.3d at 672–73 (finding that §§ 541(a)(1) and (b)(7) should be read together "defining 'property of the estate' by what is included and excluded at a fixed point in time—as of commencement of the bankruptcy case"); *In re Prigge*, 441 B.R. at 677, n.5 (discussing § 541(b)(7) in a footnote and contending that the statute "seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing").   This Court disagrees.   The phrase "as of the commencement of the case" creates a time limitation for subsection (a) only.   *In re Drapeau*, 485 B.R. at 36 (finding that the phrase "as of the commencement of the case" does "not limit the remaining provisions in § 541").   Further, this Court is guided by the Supreme Court's pronouncement that although § 541(a)(1) "could be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, we view [§ 541] as a definition of what is included in the estate, rather than as a limitation." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983).

This inclusive reading of § 541 is evident in the other provisions of subsection (a) as well as § 1306, which allude to post-petition property.   *See* § 1306(a); *In re Vanlandingham*, 516 B.R.

at 635 ("Contending that only prepetition retirement withholdings from earnings can be excluded from the property of a chapter 13 estate seems inconsistent with the forward-and-backward-reaching scope of § 1306."); *see also* § 541(a)(3)–(6) (concerning interest in property a debtor or trustee may acquire after filing a bankruptcy petition).  If the time constraint found in § 541(a) applied to the statute as a whole, then it would contradict the plain language of § 541(b)(7), in addition to the language of § 1306.  *See In re Drapeau*, 485 B.R. at 36 ("Section 1306 incorporates *all* of § 541 into the definition of estate property in the Chapter 13 case, including those exceptions detailed in subsection (b)).  Section 541(b)(7) specifically refers to "any amount withheld," and does not place a "temporal limitation" on the exclusion from the estate.  *In re Vanlandingham*, 516 B.R. at 635.  Congress intentionally omitted from § 541(b)(7) "any reference to the petition date [suggesting] that [it] did not intend a debtor's petition date to be determinative of the amount of post-petition retirement contributions a debtor may offset."  *In re Egan*, 458 B.R. at 848; *see also In re Vanlandingham*, 516 B.R. at 635 (noting that the hanging paragraph of § 541(b)(7) "does not distinguish between prepetition and postpetition amounts withheld for 401(k) contributions").

Further, the contention in *Seafort* that voluntary 401(k) contributions should not be considered "reasonable and necessary" expenses because they are not listed in § 707(b)(2)(A)–(B) treats the hanging paragraph of § 541(b)(7) as surplusage.  *Compare In re Seafort*, 669 F.3d at 672 ("Congress also does not consider voluntary contributions as reasonable and necessary expenses deductible from disposable income . . . because it did not list them in § 707(b)(2)(A) & (B).") *with* § 541(b)(7) (excluding voluntary 401(k) contributions from property of the estate "except that such amount under this subparagraph shall not constitute disposable income").  *But see TRW, Inc.*, 534 U.S. at 31.  Although the words "except that" in the hanging paragraph of

§ 541(b)(7) are indeed awkward, ignoring "the otherwise clear pronouncement that voluntary retirement contributions are excluded from the § 1325(b) disposable income calculation" treats the entirety of the hanging paragraph as surplusage.  *In re Drapeau*, 485 B.R. at 36–37; *see also In re Toro-Arcila*, 334 B.R. 224, 228 (Bankr. S.D. Tex. 2005) (noting that rendering portions of a statute to be "meaningless surplusage . . . violates a basic tenet of statutory interpretation").  The calculation of Debtors' projected disposable income will be dictated by the allowed expenses enumerated in § 707(b)(2)(A)–(B), however, the inquiry does not end there and "the calculation must also take into account other Code provisions."  *See In re Drapeau*, 485 B.R. at 37.  Accordingly, the clear language of § 541(b)(7) must be taken into account when calculating Debtors' projected disposable income.

Moreover, the *Seafort* reasoning is flawed because it assumes that § 1306's lack of reference to retirement contributions means that "Congress did not intend for income which becomes available post-petition to be excluded from property of the chapter 13 estate or from the calculation of projected disposable income."  437 B.R. at 209.  This assertion is incorrect because § 1306 makes a reference to § 541, in general.  No basis exists for limiting §1306 "to incorporate only the inclusions provided under § 541(a) and not the exclusions provided under § 541(b)."  *In re Drapeau*, 485 B.R. at 36.  Furthermore, nothing in § 1306(a)(2) provides "a textual basis to infer that § 541(b)'s exclusions . . . would not be applicable post-petition."  *Id.*  Section 541(b) specifically excludes property from property of the estate, including retirement contributions, whereas § 1306(a)(1) incorporates "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case.  *Compare* § 541 *with* § 1306(a).

This Court also finds it necessary to address the Fifth Circuit's holding in *In re Lively*, 717 F.3d 406 (5th Cir. 2013), which determined that chapter 11's absolute priority rule applies

only to an individual debtor's post-petition earnings and post-petition acquired property. The Fifth Circuit cited approvingly to *Seafort*'s interpretation of § 1306 and noted that 11 U.S.C. § 1115, a similar statute, "expressly states that property is being 'added' to that comprised by § 541 [and] the section does not supersede § 541 property any more than "2 "supersedes "3" when added to it." *Lively*, 717 F.3d at 410. Ultimately, *Seafort* held that under § 541 property of the estate, both inclusions and exclusions, is determined at a fixed point, the commencement of the case, and § 1306 only adds to property of the estate and therefore, a debtor may only exclude voluntary retirement contributions to the extent they were made pre-petition. 669 F.3d 662. The Fifth Circuit held that 11 U.S.C. § 1129(b)(2)(B)(ii) allows an individual debtor to retain post-petition earnings and acquisitions of property—but not pre-petition earnings and property—because the statute reads "the debtor may retain property included in the estate under section 1115." *Lively*, 717 F.3d at 408–09. Despite the Fifth Circuit's acknowledgement of *Seafort*, this Court's determination that § 541(b)(7) excludes Debtors' voluntary retirement contributions from projected disposable income is unchanged. The *Seafort* court's holding was not that § 1306 did not supersede or subsume § 541(a) because the court never addressed that issue. *See* 669 F.3d 662. Instead the court's holding was that § 541(b) was not subsumed by § 1306. *Id.* at 672. *Lively*, however, merely acknowledges the discussion of § 1306 in *Seafort* and does not adopt the holding as to § 541(b)(7). *Compare id. with Lively*, 717 F.3d at 410.

Additionally, the cases are addressing two entirely different issues: to wit, the application of the absolute priority rule in an individual Chapter 11 case and confirmation of a Chapter 13 plan, respectively. *Compare Lively*, 717 F.3d at 410 *with Seafort*, 669 F.3d at 672. Section 1129(b)(2)(B)(ii) expressly limits the property a debtor may retain under the absolute priority rule to the post-petition property § 1115 adds to the estate, whereas the hanging

paragraph of § 541(b)(7) expressly excludes voluntary retirement contributions from the disposable income calculation and does not limit the exclusion to a fixed point in time. *Compare* § 1129(b)(2)(B)(ii) *with* § 541(b)(7).

Further, the property excluded by § 541(b) is specifically removed from the definition of property of the estate by the Code and therefore is not the "property of the kind specified" as property of the estate. *Compare* § 541(b) *with* § 1306(a). Accordingly, § 1306 by its plain terms incorporates the entirety of § 541, and thus, does not bring in property that was never property of the estate to begin with, such as voluntary retirement contributions. *Compare* § 541(b) *with* § 1306(a). As "§ 541(b)(7) expressly excludes voluntary retirement contributions from the bankruptcy estate, there is no need for § 1306 to contain a duplicative provision excepting such contributions." *In re Cantu*, 553 B.R. at 576 (quoting *In re Drapeau*, 485 B.R. at 36); *see also In re Vanlandingham*, 516 B.R. at 635 ("Contending that only prepetition retirement withholdings from earnings can be excluded from the property of a chapter 13 estate seems inconsistent with the forward- and backward-reaching scope of § 1306").

Moreover, the *Johnson* approach is consistent with the Supreme Court's holding in *Lanning*, which provides bankruptcy courts with the authority to account for "known or virtually certain" changes to a debtor's income or expenses when calculating projected disposable income. *Lanning*, 560 U.S. at 524. Here, the changes to Debtors' income are known to this Court because Mr. Garza testified to the fact that he will be contributing to his 401(k) account post-petition and Debtors accounted for this change in the Means Test. ECF No. 27 at 13. Accordingly, the Fifth Circuit's ruling in *Lively* does not alter the determination of this Court. *See* 7 Collier on Bankruptcy ¶ 541.23 (16th ed. 2017) ("Most courts have properly held that chapter 13 debtors may contribute to a retirement plan and need not instead devote the income

used for such contributions to paying creditors through their chapter 13 plan."). *But see In re Miner*, 2017 WL 1011419, at *6 (Bankr. W.D. La. Mar. 14, 2017) (finding *Lively*'s citation to *Seafort* to be instructive and determining that post-petition voluntary retirement contributions are not excluded from disposable income).

Additionally, "the term 'projected disposable income' is a post-petition concept in the sense that § 1325(b)(1)(B) requires that all of debtor's disposable income 'to be received' be devoted to the payment of creditors under the confirmed plan [and] [a]mounts withheld from prepetition income for retirement contributions and paid to the retirement plan can never be 'disposable income.'" *In re Vanlandingham*, 516 B.R. at 635. Thus, the textual interplay between § 541 and § 1306 further exemplifies the clear pronouncement in the hanging paragraph of § 541(b)(7) that Debtors may exclude Mr. Garza's post-petition voluntary 401(k) contributions from their "projected disposable income," provided that Debtors acted in good faith. *See In re Johnson*, 346 B.R. at 263.

Although Trustee does not advocate the Court adopt the holding in *Prigge*, Trustee—similar to the court in *Prigge*—asserts that because Congress stipulated in § 1322(f) that payments for retirement loans are not considered projected disposable income, but "did not give us such a provision . . . for voluntary retirement contributions after the filing of the case," then Congress must have intended for voluntary contributions to be considered a part of Debtors' projected disposable income. *Compare* ECF No. 25 at 2 *with In re Prigge*, 441 B.R. at 677 (determining that because § 1322(f) fails to discuss voluntary 401(k) contributions that Congress acted "intentionally and purposely" and held that voluntary 401(k) contributions cannot be excluded from a debtor's disposable income). Both Trustee and the *Prigge* court, however,

overlook the fact 11 U.S.C. § 103(a)[12] applies all of Chapter 5 of the Code, including § 541(b)(7), to Chapter 13 cases. *See In re Drapeau*, 485 B.R. at 37. The exclusion of voluntary post-petition retirement contributions from projected disposable income in § 541(b)(7) is equally applicable to Debtors' case as the exclusion of retirement loan payments listed in § 1322(f), irrespective of the statutes placements in different chapters of the Code. *Compare* § 541(b)(7) *with* § 1322(f).

Additionally, Trustee's argument for Debtors' lack of good faith rests upon a finding that post-petition contributions to a 401(k) are not allowed. ECF No. 25 at 5–6. In essence, Trustee is arguing that the Plan attempts to abuse the spirit of the Code by failing to commit all of Debtors' projected disposable income to the Plan. *See In re Stanley*, 224 F. App'x 343, 346 (5th Cir. 2007). However, Trustee's argument crumbles under the weight of the plain language of the Code, which denotes voluntary 401(k) contributions are allowed pursuant to § 541(b)(7). *See In re Egan*, 458 B.R. at 850 (finding that "absent additional circumstances, bad faith cannot be inferred from the Debtors' decision to increase their post-petition 401k plan contributions"). This Court will not, nor should it, infer bad faith from Debtors' conduct as they seek only to do what is permitted by the Code. *See id.* ("Generally speaking, bad faith cannot be inferred from conduct permitted by the Bankruptcy Code.").

Furthermore, the Debtors' $424.52 monthly contribution—$5,096.24 yearly—is well within the ERISA limit of $18,000.00. *Retirement Topics-401(k) and Profit Sharing Plan Contribution Limits*, IRS (June 22, 2017), https:// www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits; *see also In re Cantu*, 553 B.R. at 577. Debtors' annual contributions are significantly less than the allowable

---

[12] "Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title."

ERISA limit, which further points to their good faith in making the voluntary 401(k) contributions. Moreover, the Court notes that Debtors' "fresh start" will not overshadow the equality of distribution to the unsecured creditors because the unsecured creditors are receiving approximately a 36% dividend based on the Plan as it is proposed and Debtors are contributing only 5% of Mr. Garza's yearly salary. *See also In re Miner*, 2017 WL 1011419, at *10 (noting that "a 3% voluntary contribution to a retirement plan would be reasonable in any Chapter 13 case filed in this division").

Accordingly, this Court finds that despite the contradicting case law, the hanging paragraph of § 541(b)(7) is unambiguous and therefore the Court must enforce the statute as written. § 541(b)(7). Although this interpretation allows Debtors to seek a fresh start, it does not topple the twin pillars because Debtors are still required to contribute their entire projected disposable income to the Plan in order to provide for an equitable distribution to their creditors. § 1325(b)(1)(B). Excluding post-petition voluntary requirement contributions from projected disposable income does not modify the requirements of § 1325 because Debtors would be required to increase the contribution of their projected disposable income if they ceased contributing to Mr. Garza's 401(k) at any time during the Plan period. 11 U.S.C. § 1329(a)(1) (providing for a chapter 13 plan to be modified upon request of debtor, trustee, or an unsecured creditor to "increase or reduce the amount of payments on claims of a particular class provided for by the plan"). *Compare* § 541(b)(7) *with* § 1325. Thus, Mr. Garza's voluntary 401(k) contributions are excluded from Debtors' projected disposable income—irrespective of Mr. Garza's failure to contribute to the 401(k) prior to bankruptcy—provided that the Plan is proposed in good faith, the contributions do not exceed the limits permitted by the 401(k) plan, and Debtors satisfy all Code requirements. *See In re Johnson*, 346 B.R. at 263.

**D. Debtors' Means Test is Improperly Calculated and Crest's Claim is Improperly Treated Under the Plan**

Irrespective of Mr. Garza's voluntary 401(k) contributions, Debtors must still properly calculate their monthly disposable income in the Means Test in order for this Court to confirm the Plan. § 1325(b)(2). The Court may not approve Debtors' Plan unless all of Debtors' projected disposable income received during the Plan's sixty-month applicable commitment period will be applied to pay the unsecured creditors because Trustee objected to confirmation of Debtors' Plan. § 1325(b)(1)(B). Accordingly, this Court must ensure that Debtors' disposable income is properly calculated pursuant to § 707(b)(2) in order to confirm the Plan over Trustee's Objection. § 1325(b)(1)(B). In her Objection, Trustee alleged that Lines 13b and 35 were improperly calculated and that a correction would result in a higher disposable income. ECF No. 19. At the March 23, 2017 hearing, Debtors' Counsel agreed that there were miscalculations and Debtors subsequently amended the Means Test as denoted above. *See generally* ECF No. 27.

Initially, this Court considers the amounts Debtors list for Vehicles 1 and 2 on Lines 13b and 13e respectively of the Means Test. *Id.* at 8. Pursuant to the Code, Debtors must calculate the average monthly payment on each vehicle by adding the amounts contractually due to the creditor for 60 months after the petition date and then divide by 60, which is not necessarily the amount Debtors would pay pursuant to the Plan. *See id.*; § 707(b)(2)(A)(iii)(I); 6-707 COLLIER ON BANKRUPTCY ¶ 707.04 ("But the deduction for secured claims is not in the amount that would be paid in chapter 13. Instead it is in the total amount "scheduled as contractually due" to any secured creditors in the 60 months after the petition."). Debtors contractually owe $17,962.45 at 5.4% annual interest on Vehicle 1, which results in an average monthly payment of $342.28. *Compare* ECF No. 28 at 7 *with* ECF No. 27 at 8. Similarly, Debtors contractually owe $25,527.12 at 5.4% annual interest on Vehicle 2 over the course of the Plan, which results in an

average monthly payment of $486.42.  *Compare* ECF No. 28 at 7 *with* ECF No. 27 at 8.

Although Trustee did not specifically object to Line 16, the Court has an independent duty to evaluate whether the Means Test is properly calculated because the Debtors must devote all of their projected disposable income to be received during the applicable commitment period to the Plan for the payment of unsecured creditors.  § 1325(b)(1)(B).  Debtors amended Line 16 of the Means Test to deduct $1,414.78 per month, whereas Schedule I lists the monthly tax payroll deductions as $1,299.51.  *Compare* ECF No. 27 at 9 *with* ECF No. 1 at 52.  Pursuant to Debtors' Payment Advices, however, this Court finds that an average of $647.68 is deducted from Mr. Garza's current monthly income for taxes.  ECF No. 5.  The Means Test allows monthly expenses for "other necessary expenses," which includes "the total monthly amount that [Debtor] actually pay[s] for federal, state, and local taxes."  ECF No. 27 at 9; § 707(b)(2)(A)(ii)(I).  Although Schedule I lists a higher amount of monthly taxes, the Court cannot corroborate the $1,414.78 deducted in Line 16 of the Means Test and the $1,299.51 on Schedule I with Debtors' Payment Advices.  *Compare* ECF No. 27 at 9 *with* ECF No. 1 at 52 *and* ECF No. 5.

Turning to the Crest claim, Trustee's Objection contends that the Plan improperly treats Crest's unsecured claim because it was originally listed as a secured claim under Section 5.  ECF No. 19; *see also* ECF No. 2 at 6.  Debtors amended the Plan to treat Crest's claim under Section 7 as a secured debt to be paid in accordance with the pre-petition contract, and neither Crest nor Trustee has objected to the new treatment.  ECF No. 28 at 6–7.  Although the objection has not been raised, Debtors improperly treat Crest's claim in both the Plan and the Means Test.  ECF Nos. 27, 28.  First, the Court notes Crest filed a proof of claim for $1,809.53 based on a rental purchase agreement, which classified the claim as unsecured.  Claim No. 2-1.  Therefore, the

Debtors' contract with Crest is an executory contract.  *In re Rigg*, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996) (holding that a debtor's rental-purchase agreement for furniture was an executory contract and therefore required the debtor either assume or reject the agreement); § 1322(b)(7) (providing "subject to section 365 of this title, [the plan may] provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected").  Accordingly, Debtors must either reject or assume the rental purchase agreement with Crest pursuant to 11 U.S.C. § 365.  *See In re Nat'l Gypsum Co.*, 308 F.3d 498, 504 (5th Cir. 2000) ("Under § 365, a debtor may elect one of two options when assessing how to treat an executory contract or unexpired lease to which it is a party; the contract or lease may either be rejected or assumed.").  Therefore, the Crest claim is improperly treated in Section 7 of the Plan.  Second, Debtors list the Crest claim as a secured debt averaging $30.16 each month on Line 33d of the Means Test.  ECF No. 27 at 11.  As determined, Crest's claim is not a secured debt and therefore Debtors may not deduct the monthly payment from their disposable income in the Means Test.  *Compare* ECF No. 27 at 11 *with* Claim No. 2-1.

Additionally, this Court turned its attention to Line 35 on which Debtors state that they owe $4,191.08 in past-due priority claims or $69.85 per month .  *Id.*  The IRS's proof of claim states that Debtors owe $4,991.08 in past-due priority claims.  Claim No. 13-2 at 3.  Debtors did not object to the IRS claim and therefore, it is an allowed claim.  11 U.S.C. § 502.  Thus, Line 35 of the Means Test must mirror the IRS claim, which should read $4,991.08 or $83.18 per month. *Compare* ECF No. 27 at 11 *with* Claim No. 13-2 at 3.  .

Accordingly, this Court finds that Debtors are not properly contributing all of their projected disposable income to the Plan due to the following errors in the Means Test: (i) miscalculating the average monthly payment for Vehicles 1 and 2; (ii) improperly listing the

amount paid for monthly taxes; (iii) improperly deducting $30.16 per month toward the Crest claim; and (iv) improperly listing the amount of the IRS's priority claim.  ECF No. 27 at 8, 11. By correcting the calculations on the Means Test, this Court finds that Debtors' monthly disposable income will increase from the current $384.47 to $1,152.97, thereby increasing the dividend available to pay the unsecured creditors.[13]  *See id.*  Even with Debtors' deduction of $424.52 in voluntary retirement contributions, the monthly disposable income would total $728.45, which is more than enough to fund a 100% plan.  *See* 7 Collier on Bankruptcy ¶ 541.23 (16th ed. 2017).  *Compare* ECF No. 27 *with* ECF No. 28.  Further, the Court finds that Crest's claim is improperly treated in the Plan because it is an executory contract which must either be assumed or rejected.  ECF No. 28 at 6–7.  Therefore, the Court finds that because Debtors Plan does not provide that all of Debtors' projected disposable income to be received during the applicable commitment period will be applied to make payments to unsecured creditors under the Plan in accordance with § 1325(b) and fail to either assume or reject the executory lease with Crest, the Plan cannot be confirmed.

## V. CONCLUSION

In an attempt to achieve their "fresh start," Debtors proposed  Plan provides, *inter alia*, a 36% dividend to unsecured creditors and a monthly voluntary contribution of $424.52 to Mr. Garza's 401(k), whereas Trustee attempts to ensure the Debtors are paying in all of their projected disposable income in satisfaction of creditors by objecting to confirmation on the grounds that voluntarily contributing to the 401(k) post-petition detracts from the projected disposable income afforded to the creditors, the Means Test contains errors, and Crest's claim is

---

[13] By implementing the correct calculations, Line 24 should total $5,355.06 for all allowed expenses under the IRS expense allowance and Line 37 should total $1,031.88 for all deductions for debt payments.  Accordingly, the total deductions in Line 38 should now total $7,423.24.  Subtracting $7,423.24 from Debtors' current monthly income of $8,576.21 results in a monthly disposable income of $1,152.97.  *See generally* ECF No. 27.

improperly treated in the Plan. *Compare* ECF No. 27 *and* ECF No. 28 *with* ECF No. 19.

Upon considering the Plan's confirmation, this Court determined that the Code, specifically § 541(b)(7) in conjunction with § 1325(b)(1)(B), permits Debtors to exclude voluntary 401(k) contributions beginning post-petition from the projected disposable income calculation regardless if they were contributing pre-bankruptcy, provided Debtors act in good faith. *See In re Johnson*, 346 B.R. at 263. *But see In re Seafort*, 669 F.3d at 674; *In re Prigge*, 441 B.R. at 667. The Court concludes that this finding comports with the twin pillars of bankruptcy because it allows Debtors to obtain a fresh start through their bankruptcy, as well as through voluntary contributions to their 401(k), while simultaneously ensuring the Plan complies with § 1325 to provide an equitable distribution to the general unsecured class of creditors. However, if at any time during the life of this case Debtors cease contributing to Mr. Garza's 401(k) account, then the $424.52 may become disposable income and will need to be paid into the Plan. *See* § 1325(b); § 1329(a)(1).

Nevertheless, despite this Court's determination that Debtors properly excluded voluntary 401(k) contributions from their projected disposable income and Schedule I pursuant to § 541(b)(7) and § 1325(b)(1)(B), this Court cannot confirm Debtors' Plan due to the miscalculations contained in the Means Test resulting in the Debtors failing to properly contribute their entire projected disposable income to be received during the applicable commitment period to the Plan. *Compare* ECF No. 27 *with* ECF No. 28. Additionally, Debtors improperly treat Crest's unsecured claim under Section 7 of the Plan. *Compare* ECF No. 28 at 6–7 *with* Claim No. 2-1.

Accordingly, for the reasons discussed herein, Trustee's Objection to Confirmation, ECF No. 19, is hereby **OVERRULED** as to Debtors' voluntary 401(k) contributions contained in

both in the Means Test and Schedule I, **SUSTAINED** as to the errors contained in the Debtors'

Means Test and improper treatment of the Crest Claim in Debtors' Plan, and therefore Debtors'

Plan, ECF No. 28, is **NOT CONFIRMED**.

An Order consistent with this Memorandum Opinion will be entered on the docket

simultaneously herewith.


SIGNED 08/15/2017.


_____
Eduardo V. Rodriguez
United States Bankruptcy Judge